## In re Appeal of Terra Grain, Inc.

*Morgan, Hallgren & Heinly, P.C.,* for appellant.
*O. H. Mummau,* contra.

MUELLER, *J.,* November 20, 1979—This is an appeal from a decision of the Zoning Hearing Board of West Hempfield Township. Appellant Terra Grain, Inc. owns approximately 15 acres of land located on the northwest side of Spooky Nook Road, east of Eby Chiques Road, in West Hempfield Township. Appellant also owns 93 acres across the road from these 15 acres which it farms. On April 5, 1979, appellant filed an application for a special exception under section 702.9(G) of the West Hempfield Township Zoning Ordinance to construct a facility for the confined production of hogs. The area in which appellant's property is located is zoned rural and for agricultural use.

A hearing was held before the board on May 8, 1979, and an oral decision by the board was rendered on June 12, 1979. The board granted the special exception sought by appellant but attached certain conditions to that special exception. Appellant

appeals from the board's decision arguing that attaching conditions A, B, C, D, E, J, and K to the special exception was an abuse of discretion on the part of the board.

The conditions appellant objects to are:

"Condition A—This special exception inures only to the entity Terra Grain, Inc. This is to say that the operations of hog confinement facilities are to be manned by employees or stockholders of the corporation.

Condition B—The facilities may not be leased or assigned to any other individual, partnership, proprietorship, association, co-op, corporation, joint venture or other entity without Board approval of a special exception.

Condition C—The granted special exception applies only to the office, gestation, farrowing and nursery units and to a slurrystore with a capacity of approximately four hundred eighteen thousand (418,000) gallons, and the incinerator.

Condition D—The applicant will have to apply for a special exception if and when they decide to build a grower and a finishing house.

Condition E—There can be no subdivision of the one hundred eight (108) acres as long as the hog house is in operation without Board approval.

Condition J—Use of the incinerator is permitted only on the following schedule:

1. April through October—6:00 a.m. to 6:00 p.m.;

2. November through March—8:00 a.m. to 2:00 p.m.;

3. No use permitted on Saturday or Sundays;

4. No use permitted on a nationally observed holiday.

Condition K—Storage of deceased pigs and after-birth matter will be placed in a reefer suited for that purpose until such time of the disposal of any deceased pigs or afterbirth matter."

A zoning hearing board has the power to attach conditions to the grant of a special exception. Conditions imposed by a zoning board must be reasonable, based on the evidence in the record and bear a reasonable relationship to the health, safety and general welfare: Van Sciver v. Zoning Board of Adjustment, 396 Pa. 646, 152 A. 2d 717 (1959). All but one of the conditions objected to by appellant do not fit these requirements. They are, therefore, arbitrary and an abuse of the board's discretion.

## Conditions A and B

The obvious effect of these two conditions is to make the granting of the special exception personal to the appellant. While the board may grant a special exception conditionally or limit it in time or use in any manner consistent with the zoning ordinance, the special exception always runs with the land and cannot be personal: Tremblay Appeal, 53 D. & C. 2d 766 (1971); Fernald Appeal, 17 D. & C. 2d 291 (1958). The impact of zoning regulations relates to matters of use of the property, not to the identity of the owner: Tremblay Appeal, supra; Widenmeyer v. Northampton Twp. Zoning Bd. of Adjustment, 12 Bucks 582 (1962).

The board's justification for the imposition of these conditions is that they will ". . . insure the community that individuals with the appropriate expertise would manage and operate the facilities. . . ." ("Answer" of West Hempfield Township Zon-

ing Hearing Board, ¶6(b)(i).)* This justification for the conditions overlooks one fact. The special exception has been granted to a corporation. Since a corporation theoretically has perpetual existence, there is nothing to assure that Terra Grain, Inc. will always have the same shareholders, directors or employes. Granting the special exception only to the entity Terra Grain, Inc. would not, therefore, accomplish the board's purported purpose in attaching these conditions.

The proper way to assure that the hog production facilities would be properly operated and maintained would be to attach to the special exception conditions which relate to the manner in which such facilities are operated. Conditions F, G, H, I and M to which appellant has not objected are all intended to assure the proper operation and maintenance of the facilities. Conditions A and B are unnecessary and ineffective in accomplishing their asserted purpose and are invalid.

### Conditions J and K

Condition J limits the days and hours during which appellant may use its incinerator to dispose of dead pigs. Appellant does not object to the limit

---

*In making its return, the board filed what it calls an "Answer." There is no authority or procedure under the Pennsylvania Municipalities Planning Code of July 31, 1968, P.L. 805, as amended, 53 P.S. §10101 et seq., or the Local Rules of Court of Lancaster County for such a pleading. The "Answer" as filed was incomplete. No notes of testimony of the hearing before the board was filed, no zoning ordinance was included, and all of the original documents and papers relating to appellant's application were not filed as required by Local Rule 27(C). In addition, the board filed no brief nor did it have an attorney present at oral argument.

on the hours the incinerator may be in operation each day, but it does object to the limit placed on the days of the week during which the incinerator may be used.

The limitation on the days the incinerator may be operated bears no relationship to the evidence presented at the hearing on the special exception, the board's own findings of fact or to the health, safety and general welfare.

Appellant's witnesses testified that the incinerator gives off neither odor nor particulate matter while in use. There was no evidence presented to the contrary. The board's Finding of Fact UU reflected this: "The incinerator burns at such a high temperature and with the double burner there is no odor or particle matter." The only reason given by the board for this restriction on the use of the incinerator was: "Restriction J was imposed by the Board as a complement to the existing regulations pertaining to the burning of refuse in the township." ("Answer" of West Hempfield Township Zoning Hearing Board, ¶6(b)(v).)

Appellant asserts that limiting the days of operation of the incinerator may itself have a deleterious effect on the health, safety and general welfare. To restrict the incineration of dead pigs over a three day holiday weekend could cause a health problem. Condition K which requires appellant to install a reefer (refrigeration system) for the storage of deceased pigs and afterbirth until incineration would solve this health problem. However, there was no evidence presented at the hearing before the board that storage of the dead pigs was necessary before incineration nor was this reflected in the findings of the board. The need for a refrigeration system arises solely as a result of the board's limitation of the days during which the incinerator may be oper-

ated. If the incinerator can be operated every day, there is no need for a refrigeration system to store dead pigs.

Condition J and Condition K bear no relationship to the evidence or the board's own findings of fact. They are arbitrary and unreasonable limits on the appellant's use of its property.

## Conditions C and D

These two conditions limit the size of appellant's proposed hog production and manure storage facilities by requiring appellant to obtain a second special exception for the growing and finishing unit when appellant decides to add this.

Appellant applied for a special exception pursuant to section 702.9(G) of the Zoning Ordinance for the high density or confined handling of hogs. Appellant sought permission to construct a gestation unit, farrowing house, a nursery and growing and finishing units. (Board's Finding of Fact F). At the hearing, appellant presented testimony that it did not intend to construct the growing and finishing units at the present time but might add them later. Based upon a number of its findings, the board concluded that all of the requirements applicable to the requested special exception had been met. (Board's Conclusions C, D and E.)

The board's findings of fact and conclusions and the testimony presented at the hearing reflect that a growing and finishing unit would be added in the future. In fact, appellant's request for a special exception included such a unit. The board found that the requested special exception satisfied the requirements of the zoning ordinance. The only reason given by the board for the imposition of these conditions is "to insure the community that opera-

tions transpired (sic) in accordance with the evidence presented by the applicant and that interim actions by the applicant be evaluated in order to allow the West Hempfield Township Hearing Board the power to permit or deny expansion of the facility." The board also asserts that the 108 acres of which the property is composed are insufficient for the application of the increased amounts of manure from such an increased operation. ("Answer" of Board ¶6(b)(ii-iii).) There was no evidence that the land could not absorb the increased amounts of manure. In fact, the board's Finding of Fact RR clearly contradicts this.

In several cases courts have held that it was unreasonable for zoning boards to limit the size of facilities for which special exceptions had been granted where the evidence did not present any reason for such a limitation: Kenneson v. Whitemarsh Twp. Zoning Hearing Bd., 97 Montg. 191 (1973); Wasson v. Board of Adjustment, 17 Chester 324 (1969).

Conditions C and D are not supported by the evidence, nor were they reasonably related to the health, safety and general welfare of the community.

## Condition E

This condition requires appellant to get the board's approval before appellant's 108 acres may be subdivided. Unlike the other conditions which the board has attached to Terra Grain, Inc.'s special exception, Condition E is supported by the evidence and does bear a reasonable relationship to the health, safety and general welfare.

All of the testimony produced at the hearing was based on the assumption that the portion of the 108

acres not being used to raise hogs would be used to dispose of the accumulated slurry (liquid manure). No evidence was presented that appellant would be able to find other landowners who would want the manure injected into their land. The findings of the board clearly reflect this situation.

Three hundred sixty thousand gallons of slurry will be produced every six months by the operation of the hog production facilities without the growing and finishing unit. (Finding of Fact GG.) If the growing and finishing unit is added so that there are 4500 pigs instead of 2000 (Findings of Fact W and X), the amount of slurry will surely double. The board is properly concerned that appellant may not be able to dispose of over a million gallons of slurry every year if the remainder of the 108 acres not being used for the hog production facilities is unavailable. The board was not unreasonable in its desire to make certain that this large amount of liquid manure could be disposed of properly. The board could reasonably conclude that the failure to properly dispose of several hundred thousand gallons of liquid manure might affect the health of the surrounding community.

The restriction imposed by the board was not a total ban on the subdivision of the property. The board merely required that appellant obtain board approval before the land is subdivided. Condition L which is attached to the decision of the board provides that appellant must provide the board with proof of legal permission to dispose of manure on any other property. Obviously such a requirement is meant to provide a mechanism by which if appellant can satisfy the board that it has permission to dispose of the manure on the property of other landowners, the board may grant appellant permission to sever the 93 acres being used for the disposal of

the manure from the 15 acres on which the facilities will be built.

Since the court cannot say that the board was unreasonable in attaching Condition E to the grant of appellant's special exception and since that condition is supported by the evidence, the condition on appellant's ability to subdivide its land is reasonable.

## ORDER

And now, November 20, 1979, the decision dated June 12, 1979, of the West Hempfield Township Zoning Hearing Board entered on the application of Terra Grain, Inc. granting Terra Grain, Inc. a special exception for the confined handling of hogs in an area zoned rural is affirmed but modified by the deletion of Conditions A, B, C, D and K. Condition J is modified in that the limit on the days on which the incinerator may be used is removed.